UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

In re:

SMITH DAIRY
a General Partnership
EIN 84-0480980

Debtor.

Case Number 10-26703-EEB

Chapter 11

### DEBTOR'S MOTION FOR FINAL ORDER AUTHORIZING USE OF CASH COLLATERAL

Smith Dairy, as debtor in possession (the "Debtor"), moves pursuant to Section 363 of the Bankruptcy Code and Local Bankruptcy Rule 4001-3 for expedited entry of an order ("Interim Cash Collateral Order") authorizing the Debtor to use cash collateral (as defined in the proposed Interim Cash Collateral Order) for the purposes of funding its day-to-day business operations. As grounds for this motion, the Debtor states the following:

### Jurisdiction

1.  This Court has jurisdiction over this motion under 28 U.S.C. §§ 157(b)(2)(M) and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.  Venue of this proceeding and this motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

3.  The statutory bases for the relief requested herein are 11 U.S.C.A. § 363, Bankruptcy Rules 4001 and 9014, and L.B.R. 4001-3.

### Relief Requested

4.  The Debtor seeks entry of the Interim Cash Collateral Order authorizing it to use cash collateral pursuant to section 363 of the Bankruptcy Code, and finding that the interests of

Colorado Community Bank ("Prepetition Lender") will be adequately protected without additional relief under sections 363(e) of the Bankruptcy Code, until such time as the court is able to conducting a hearing on the Debtor's motion for entry of a final cash collateral order, which motion is being filed at or about the same time as this motion for entry of an interim order. The Debtor does not seek, and the proposed order tendered with this motion does not contain, any relief or provisions of the kind specified in L.B.R. 4001-3APP.

## Background

5. On July 2, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is operating its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6. As set forth in the Declaration of Roy Smith (the "Declaration") attached hereto as Exhibit A, the Debtor owns the real estate, livestock, equipment and other assets utilized in its business.

7. The Debtor is in the business of raising heifers and leasing milk cows. Livestock in the possession of the debtor consists predominantly of young stock. The debtor typically raises heifers until they have had their first calf, and then leases them to third parties who pay a monthly fee that is dependent to a certain extent on milk production and price. The debtor's other primary sources of income are the sale of livestock and custom-feeding arrangements with third parties who put their young stock in the care and custody of the debtor.

8. The livestock owned and cared for by the Debtor (as well as livestock owned by third-parties and cared for by the debtor under custom feeding agreements) would be immediately and irreparably impaired if the Debtor were denied the authority to use cash collateral.

9. The Debtor's cash-flow projections, set forth in detail in the attachment to Exhibit A, anticipate flat performance for July, with net income of $1,000. However, for the months of August through December, the Debtor is projecting substantial, positive net cash flow totaling $58,000, and that figure takes into account an interest payment of $87,500 to the holder of the mortgage on the debtor's real estate.

### Prepetition Secured Debt

9. The Debtor financed its operations with credit facilities extended by the Prepetition Lender. Prepetition Lender claims to be owed approximately $1.5 million on an operating loan in connection with which the Debtor pledged substantially all of its personal property assets. Prepetition Lender also claims to be owed approximately $1.7 million on a loan secured by the Debtor's real estate. Accordingly, the Prepetition Lender is likely to claim that the Debtor's cash and the proceeds of the Debtor's livestock and real property constitute "cash collateral" under Section 363 of the Bankruptcy Code.

10. The Debtor does not believe that any party other than the Prepetition Lender either has or would claim to have an interest in cash collateral.

### Basis for Relief

10. The Debtor's use of property of its estate is governed by section 363(c)(1) of the Bankruptcy Code, which provides in pertinent part as follows:

> If the business of the debtor is authorized to be operated under section … 1108 … of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11. Section 362(c)(2)(A) of the Bankruptcy Code permits a debtor in possession to use cash collateral with the consent of the secured party. Section 363(e) of the Bankruptcy Code

requires that the debtor adequately protect the secured creditor's interest in property to be used by a debtor against any diminution in value of such interest resulting from the debtor's use of the property during the chapter 11 cases.

12. Adequate protection is always determined by the extent of the anticipated or actual decrease in the value of the secured creditor's collateral during the bankruptcy case. *In re Gallegos Group Research Corporation,* 193 B.R. 577, 584 (Bankr. D. Colo. 1995). Where a debtor desires to use cash collateral, a court must determine the value of the creditor's interest in the cash collateral and whether the debtor's proposed use of cash collateral would impair that interest, and to what extent adequate protection is required. *Id.*

13. Here, based on the Declaration, it is apparent that the value of the Prepetition Lender's collateral[1] will not be impaired, and in fact can only be maintained, by allowing the Debtor to pay for feed, labor and other products and services associated with the day-to-day operation of its business. If the Debtor cannot use cash collateral, the health of the Debtor's livestock – which the Prepetition Lender may also claim as part of its collateral – will be jeopardized, the Debtor's ability to lease animals to third parties will be severely jeopardized, and the Debtor's revenue stream from custom-feeding arrangements will quickly morph into liability for damage or death to third parties' animals. In short, in the absence of interim authority to use cash collateral, immediate and irreparable harm is likely to be occasioned upon assets that are vital to the estate and its creditors.

14. The Debtor does not seek unfettered discretion with respect to the use of cash collateral. It proposes to utilize cash collateral in substantial accordance with the operating budget attached to the Declaration, subject only to such variance as is necessitated by market

---

[1] Debtor does not admit the validity, perfection or priority of any security interest claimed by any of the Prepetition Lenders.

conditions or is warranted in the exercise of the Debtor's reasonable judgment for the purpose of operating its business without impairing the Prepetition Lender's claimed security interests. The Debtor asks that the Court provide in its order that the use of cash collateral as provided therein, coupled with the continuation of whatever security interests Prepetition Lender presently has in the Debtor's inventory, accounts receivable and other assets (to the same extent, validity, priority and value of such prepetition security interests), will provide adequate protection as required under section 363(e) of the Bankruptcy Code.

WHEREFORE, for the reasons herein set forth, the Debtor requests entry of a final order approving its use of cash collateral in accordance with the form of order and Budget submitted with this motion.

Dated this 2nd day of July, 2010.

Respectfully submitted,

OTTEN JOHNSON ROBINSON
NEFF & RAGONETTI, PC.

By: \s\ *David P. Hutchinson*
David P. Hutchinson, #18914
950 17th Street, Suite 1600
Denver, CO  80202
Telephone:  303.825.8400
Facsimile:   303.825.6525
dhutchinson@ottenjohnson.com